UNITED STATES DISTRICT COUT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN WAYNE ENGLISH,

     Plaintiff,

v.                                         Case No. 3:21-cv-336-MCR

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for supplemental security income ("SSI").  Plaintiff filed an application for SSI on November 25, 2014, alleging disability beginning April 20, 2014.  (Tr. 149, 328.)  The Agency denied Plaintiff's claims both initially and upon consideration.  (Tr. 201, 206.)  Upon Plaintiff's request, Plaintiff testified at a hearing held on July 24, 2017, before Administrative Law Judge ("ALJ") Mallette Richey.  (Tr. 37-80.)  ALJ Richey issued an unfavorable decision on October 3, 2017, finding Plaintiff limited to light work, and determining he was not disabled.  (Tr. 182-86.)

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 16.)

Plaintiff requested review of ALJ Richey's decision, which the Appeals Council ("AC") granted on March 7, 2019. (Tr. 194-95.) The AC found that remand was warranted because the ALJ did not evaluate evidence from Putnam Community Medical Center. (Tr. 194.) On remand, Plaintiff appeared telephonically on April 7, 2020, before ALJ Kelley Fitzgerald. (Tr. 15.) On May 6, 2020, ALJ Fitzgerald issued a second unfavorable decision. (Tr. 15-28.) Plaintiff then timely filed a Complaint with this Court. (Doc. 1.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

## I.   Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v.*

2

*Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

Plaintiff raises two issues on appeal.  First, Plaintiff argues that "[t]he ALJ's residual functional capacity ("RFC") determination is unsupported by substantial evidence as it fails to complete a function-by-function analysis of Plaintiff's ability to stand and walk prior to 2020."  (Doc. 27 at 10.)  Plaintiff asserts that the ALJ "did not explain Plaintiff's limitations in regards [sic] to standing and walking prior to April of 2020." (*Id*. at 11.)  Second, Plaintiff argues that "[t]he ALJ's evaluation of Plaintiff's subjective complaints is unsupported by substantial evidence and rooted in legal error." (*Id*. at 14.)

As to the first issue, Defendant responds as follows:

> As an initial matter, Plaintiff's argument fails because even if his contentions were unquestioningly accepted, the ALJ used the testimony of the vocational expert to determine that Plaintiff's additional walking limitations were not disabling. Meaning even if Plaintiff's limitation to walking for 2 hours in an 8-hour day and only 15 minutes at a time were extended throughout the entire relevant period, substantial evidence would

3

still support the ALJ's finding that Plaintiff could perform the
duties of an inspector, hand packager, and ticket taker and was
therefore not disabled.  Plaintiff does not contend that he had
additional restrictions in walking, nor does he allege the ALJ
made any error in relying on the vocational expert's testimony.

Moreover, Plaintiff's contention that the ALJ did not
comply with SSR 96-8p because she did not make a "function-by-
function inquiry" in assessing his walking ability prior to April
2020 is meritless.  The ALJ's RFC assessment is, in fact, a
"function-by-function" assessment and complies with the proper
legal standards, including SSR 96-8p.  Given the definition of
light work in the regulations and rulings and the ALJ's
discussion of the record evidence, the ALJ was not required to
further discuss Plaintiff's ability to perform the exertional
demands of light work.

(Doc. 30 at 13-14 (internal citations omitted).)

### A.    Relevant Evidence of Record

### 1.    Azalea Health Records

From June 13, 2013, through July 25, 2014, Plaintiff treated at Azalea

Health.  (Tr. 571-595.)  On June 13, 2013, Plaintiff complained of back pain

after his shoe got caught on a gate causing him to fall on a hard surface.  (Tr.

592.)  Plaintiff also stated that his fibromyalgia worsened after the fall.  (*Id*.)

Upon inspection and palpitation, Dr. Emilio Gonzalez noted that Plaintiff had

muscle spasms throughout his spine and moderate pain with motion.  (Tr.

594.)  Dr. Gonzalez instructed Plaintiff to avoid heavy lifting, bending, and

heights, and to rest, ice, stretch, and walk for exercise.  (Tr. 595.)  On July 24,

2013, Plaintiff returned, complaining of worsening back pain and that Lortab

was not helping his pain.  (Tr. 589.)  Upon inspection, Dr. Gonzalez noted

that Plaintiff had muscle spasm in his thoracic spine and severe pain with range of motion. (Tr. 590.) Dr. Gonzalez again advised Plaintiff to avoid heavy lifting, bending, and heights, to rest, ice, stretch, walk for exercise, and lose weight. (Tr. 591.)

On August 30, 2013, Dr. Gonzalez told Plaintiff to forego taking HCTZ because it caused his gout to flare up. (Tr. 586, 589.) On November 26, 2013, Plaintiff presented with complaints of fibromyalgia, gout, and chronic back pain, and he also requested a referral to a pain specialist. (Tr. 582.) At this visit, Dr. Gonzalez advised Plaintiff to exercise at least three times per week for more than 20 minutes, specifically power walking, and increasing his aerobic and weight bearing exercise. (Tr. 585.) On December 2, 2014, Plaintiff complained of gout and pain in the lower leg joint. (Tr. 575.) Plaintiff's musculoskeletal notes revealed moderate pain with motion, moderately reduced range of motion, and swelling and tenderness in his knees. (Tr. 578-79.) Dr. Gonzalez instructed Plaintiff to use a warm towel over the painful area and moist heat for 20-30 minutes every two hours while awake for three days. (*Id*. at 579.)

## 2. Robert B. Dehgan, M.D., Jacksonville Multispecialty Group

Upon referral by Dr. Gonzalez, on January 27, 2014, Plaintiff began treating with Dr. Robert B. Dehgan, a pain specialist with Jacksonville

Multispecialty Group.  (Tr. 629.)  Plaintiff's musculoskeletal exam revealed no swelling, no tenderness of the axial and peripheral joints, no tenderness to palpitation with full range of motion in the hands, wrists, elbows, and hips, but tenderness to palpitation in his knees.  (Tr. 629, 630.)  On March 24, 2014, Plaintiff's examination revealed mild to moderate right knee swelling, tenderness in the medial and lateral joint, normal range of motion in the knees, and pain in the right foot and ankle.  (Tr. 623.)  During the July 14, 2014 general examination, Dr. Dehgan noted that Plaintiff had moderate tenderness on the lumbar paraspinals and buttocks, pain with forward flexion, difficulty standing because of pain in his ankle and right knee, and positive straight leg raises bilaterally.  (Tr. 610.)

### 3.    Miguel Dejuk, M.D.

From June 14, 2016 through June 5, 2017, Plaintiff treated with Dr. Miguel Dejuk.  (Tr. 688-726.)  On June 14, 2016, Plaintiff needed pain medication refills.  (Tr. 724.)  Dr. Dejuk noted that Plaintiff's musculoskeletal exam was unremarkable, and that Plaintiff was moving all limbs well.  (Tr. 725.)  Plaintiff stated that he bought a step counter and had been using it to "push [himself] to walk."  (Tr. 724.)  On July 5, 2016, Plaintiff appeared needing a check-up and Lortabs and Flexeril refills for his back pain.  (Tr. 722.)  Dr. Dejuk again noted that Plaintiff's musculoskeletal exam was unremarkable, and that Plaintiff moved his limbs well.  (Tr. 723.)  On

September 23, 2016, Plaintiff presented with complaints of gout flare up with pain in both legs and swelling in his feet.  (Tr. 714.)

### B. The ALJ's Decision

At step two of the sequential evaluation process[2], the ALJ found that Plaintiff had the following severe impairments: gout, fibromyalgia, knee osteoarthritis, and obesity.  (Tr. 18.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.*)

Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC was as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except with no more than occasional climbing [of] ramps and stairs, balancing, stooping, kneeling, crouching, crawling, and no climbing [of] ladders[,] ropes[,] and scaffolds.  He should avoid concentrated exposure to cold, wetness, vibrations, and hazards[,] such as moving machinery and unprotected heights.  As of April 2020, the claimant can walk no more than two hours in an eight hour [sic] workday for no more than 15 minutes at a time.

(*Id.*)

In making this determination, the ALJ discussed the evidence of record.  (Tr. 20-26.)  She found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his

---

[2] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 416.920(a)(4).

statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely supported for the reasons explained in [the] decision." (Tr. 19.) Then, after determining that Plaintiff was unable to perform any past relevant work, at the fifth and final step of the sequential evaluation process, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform such as inspector, hand packager, and ticket taker. (Tr. 27.)

### C. Standard for Evaluating Subjective Pain Testimony

When a claimant seeks to establish disability through his own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id*.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that his pain is disabling through objective medical evidence from an acceptable medical source that shows a medical

impairment that could reasonably be expected to produce the pain or other symptoms, pursuant to 20 C.F.R. § 416.929(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561.  *See also* SSR 16-3p[3] (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms" to determine "the extent to which an individual's symptoms limit his or her ability to perform work-related activities").

> As stated in SSR 16-3p:
>
> In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.
> . . .
>
> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent."  It is also not

_____

[3] SSR 16-3p rescinded and superseded SSR 96-7p, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p.

enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[4]  The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

. . .

In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation.  The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.  Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]

SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms

and to follow treatment once it is prescribed" will also be considered "when

evaluating whether symptom intensity and persistence affect the ability to

---

[4] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c)(3); SSR 16-3p.

perform work-related activities." *Id.* "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the adjudicator] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.* However, the adjudicator "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* In considering an individual's treatment history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms;
- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;
- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;
- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;
- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;
- That due to various limitations (such as language or mental limitations), the individual may not understand the

appropriate treatment for or the need for consistent
treatment.

*Id.*

### D. Analysis

As to the first issue, the Court finds that the ALJ's RFC determination
is supported by substantial evidence.  A claimant's RFC is the most a
claimant can still do despite his limitations.  20 C.F.R. § 416.645(a)(1).  The
assessment of a claimant's RFC must be based on all the relevant medical
and other evidence in the record.  *Id*.  An ALJ's decision must state his RFC
determination and provide the supporting rationale for it.  In determining a
claimant's RFC, Social Security Ruling 96-8p requires the ALJ to perform a
function-by-function analysis.  The ruling states that the "RFC assessment
must . . . assess [the individual's] work-related abilities on a function-by-
function basis."  *Id*.  Moreover, while SSR 96-8p requires consideration of all
evidence, it does not require that the ALJ expressly address each functional
ability in her decision.  *See Freeman v. Barnhart*, 220 Fed. Appx. 957 (11th
Cir. 2007) (explaining that complying with SSR 96-8p's function-by
function requirement does not require the ALJ to be specific or explicit in his
findings for the RFC assessment so long as he considers all of the evidence
and whether it supports the level of disability claimed); *see also Allen v.
Astrue*, No. 09-00496-B, 2010 WL 1658811, at *7 (S.D. Ala. Apr. 21, 2010);

*Gully v. Astrue*, No. 1:08cv245-WC, 2009 WL 1580416, at *4 (M.D. Ala. June 3, 2009) ("[W]here the ALJ has considered all available relevant evidence pertaining to the claimant's functional limitations, the failure to specifically and explicitly discuss the ALJ's assessment of the claimant's work-related abilities on a function-by-function basis does not require reversal.") (internal quotations omitted).

Here, Plaintiff argues that the ALJ "did not explain Plaintiff's limitations in regards [sic] to standing and walking *prior* to April of 2020." (Doc. 27 at 11.) However, the Court is not persuaded by Plaintiff's argument that the ALJ failed to describe Plaintiff's functional capacity for the six years prior to March 2020. Although the ALJ stated "[a]s of April 2020, the claimant can walk no more than two hours in an eight-hour workday for no more than 15 minutes at a time," (Tr. 18), the ALJ carefully considered the entire medical record, beginning with the alleged onset date and beyond. (*See* Tr. 20-26.) Additionally, the ALJ began her decision by referencing the correct alleged onset date—April 20, 2014. (Tr. 16, 17.) As such, it appears that the ALJ's reference to "as of April 2020," in Plaintiff's RFC was perhaps a harmless typo at best.

The ALJ's RFC determination is further supported by the state agency medical consultant's opinion, which included a function-by-function assessment of Plaintiff's exertional limitations. (Tr. 26, 169-173.) As of

March 18, 2015, Dr. Suzanne Johnson opined that Plaintiff could stand and/or walk for approximately six hours in an eight-hour workday and sit for approximately six hours in an eight-hour workday.  (Tr. 169.)  The ALJ's RFC determination is also supported by medical records from Plaintiff's treating physicians.  (*See* Tr. 623, 629, 630 (listing Dr. Dehgan's examination notes from January 27, 2014 to July 14, 2014, noting Plaintiff's swelling and pain ranging from mild to moderate); Tr. 688-726 (listing Dr. Dejuk's examination notes from June 14, 2016 to June 5, 2017, noting Plaintiff's unremarkable musculoskeletal exam and Plaintiff's ability to move his limbs well).)

Moreover, the vocational expert's ("VE") testimony constitutes substantial evidence because the ALJ's hypothetical questioning during the hearing included all of Plaintiff's impairments. "In order for a vocational expert's testimony to constitute substantial evidence the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir.2002).  Here, the ALJ posed hypothetical questions that encompassed Plaintiff's impairments and limitations, and the VE testified that the hand packager and inspector jobs would remain available.  (Tr. 113-14.)  Thus, in light of the state agency medical consultant's functional opinion, Plaintiff's treating physicians' notes, and the VE's testimony, substantial evidence supports the ALJ's RFC determination.

14

As to the second issue, the Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints.  The ALJ made specific findings as to Plaintiff's credibility and concluded that his "complaints [were not] completely dismissed, but rather, [were] included in the [RFC] to the extent that they [were] consistent with the evidence as a whole."  (Tr. 26.)  Additionally, the Court finds that the ALJ's statement that Plaintiff's allegations are not supported by any treating provider (Tr. 19) was harmless error at most.  Plaintiff points to two treating physicians' notes that purportedly contradict this statement.  First, Plaintiff cites to Dr. Dejuk's undated letter, which states that "[Plaintiff's] medical condition has made it unable [sic] for him to work permanently."  (Tr.  650.)  However, the ALJ considered this letter, but gave it no weight reasoning that it was on an issue reserved for the Commissioner and that Dr. Dejuk's opinion dramatically contrasted with his treatment notes showing normal examinations during the entire treatment period.  (Tr. 26.)  Thus, the ALJ was entitled to discount Dr. Dejuk's conclusory letter to the contrary.  Next, Plaintiff points to Dr. Baird's December 2018 notation that Plaintiff had "functional disability from his left knee joint" to contradict the ALJ's evaluation of Plaintiff's subjective complaints.[5]  However, "[a] claimant's residual functional capacity is a matter

_____

[5] Dr. Dejuk's letter and Dr. Baird's remark appear to be conclusions on an issue reserved for the Commissioner.

15

reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 486 (11th Cir. 2012).  Thus, this single remark by Dr. Baird does not outweigh the substantial evidence supporting the ALJ's determination that Plaintiff's impairments were not as limiting as he claimed.

Particularly regarding Plaintiff's ability to walk, the ALJ's decision to discredit Plaintiff's testimony is further supported by Plaintiff's physical examinations repeatedly revealing no edema, negative bilateral straight leg raises, and a stiff gait with normal balance.  (*See* Tr. 679, 667, 661, 656.) Additionally, Dr. Alea[6] with Azalea Health declined to refill Plaintiff's hydrocodone and morphine because he "[did] not see a need," and "strongly recommend[ed] pain clinics for evaluation and therapy."  (Tr. 670.)  Dr. Alea also noted that Plaintiff was still overweight, and his eating habits were not helpful.  (*Id.*)

Lastly, Plaintiff argues that substantial evidence does not support the ALJ's findings regarding his fibromyalgia.  The Court disagrees.  Contrary to Plaintiff's arguments, it appears the absence of objective findings was not the

---

[6] The ALJ and Defendant both incorrectly state that Dr. Gonzalez declined to refill Plaintiff's medications, but the record shows that Dr. Michael Alea was the medical provider during Plaintiff's June 15, 2015 visit.  (Tr. 673.)

basis for the ALJ's negative credibility determination.  Instead, the ALJ
based his findings on the overwhelming evidence that revealed unremarkable
physical examinations as well as Plaintiff's inconsistencies between his
descriptions of daily activities and his claims of infirmity.  Specifically,
throughout the decision, the ALJ highlighted three occasions where (after his
fibromyalgia diagnosis), Plaintiff sought medical treatment after physical
exertion surpassing his alleged capabilities. (*See, e.g.*, Tr. 20-21 (ALJ
discussing December 2015 Putnam Community Medical Center visit where
Plaintiff presented with neck and back pain after lifting a heavy object); Tr.
21 (ALJ discussing March 2016 Putnam Community Medical Center visit
where Plaintiff presented with upper back pain after working out in the
heat); Tr. 24 (ALJ discussing October 2019 Putnam Community Medical
Center visit where Plaintiff presented with back pain after moving a
mattress).)  Plaintiff himself even testified that his gout was the "bigger
problem" relative to his alleged inability to work.[7]

---

[7]      Plaintiff's April 7, 2020 hearing testimony was in relevant part as
follows:
         Q.  [Y]ou have gout, sir?  So, gout was the primary reason why
you were unable to work starting in April of 2014?
         A.  [M]a'am, it was the gout as well as the fibromyalgia.  This is
what I was having with my back.
         Q.  Okay.  Well, which one would you say is the –
         A.  It's bad.
         Q.  Which one is the bigger problem?

In light of the ALJ's discussion of fibromyalgia, the Court rejects Plaintiff's claim that the ALJ "disregarded the nuances associated with fibromyalgia completely." (Doc. 27 at 22-23.) The ALJ implicitly credited some of Plaintiff's alleged pain due to fibromyalgia by concluding that his fibromyalgia constituted a severe impairment. *See Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 988 (11th Cir. 2015) (stating that "[t]he mere fact that the ALJ determined that Laurey's fibromyalgia was a "severe impairment," however, does not mean that the ALJ was required to attribute severe pain to her fibromyalgia.").) Thus, substantial evidence supports the ALJ's credibility determination as it relates to Plaintiff's subjective pain allegations.

## III. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. Based on this standard of review, the ALJ's decision

---

A. The gout was the one that cause me to be immobilized that I couldn't go out because it would keep me from walking for days. . . . (Tr. 102.)

that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question should be affirmed.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on September 7, 2022.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record